```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
VIKTOR LESHCHENKO,                                               :
                                                                 :
                              Plaintiff,                         :
                                                                 :      24 Civ. 8790 (JPC)
              -v-                                                :
                                                                 :      OPINION AND ORDER
GO NEW YORK TOURS, INC. d/b/a TOPVIEW,                           :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Viktor Leshchenko, a gay man, worked at Go New York Tours, Inc. d/b/a TopView ("TopView") between February 2023 and January 2024. He alleges that, in November 2023, a group of TopView employees sent a collective email to their supervisors reporting that they had overheard another employee, identified as "Ricky," using homophobic language. Days after receiving that complaint email, TopView's management allegedly confronted Ricky, admonished him to stop using such language, and issued an apology for his behavior.

There is no allegation that Ricky's offensive behavior continued after TopView's management intervened. But then, in January 2024, Leshchenko claims to have sent an email to his supervisors complaining about the fact that Ricky still worked at TopView. Soon after making that complaint, TopView allegedly fired Leshchenko. Based on these events, Leshchenko brings claims against TopView for retaliation, asserting causes of action under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

TopView now moves to dismiss each of Leshchenko's causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Leshchenko fails to allege that he engaged in protected activity or that TopView was aware that he had done so. The Court agrees: Leshchenko does not sufficiently allege that he participated in the November 2023 collective email and his January 2024 complaint email does not reflect an objectively reasonable belief that TopView's employment practices were illegal under Title VII. The Court therefore dismisses Leshchenko's Title VII retaliation claim, and it declines to exercise supplemental jurisdiction over his state-law and city-law retaliation claims. But while the Court grants TopView's motion to dismiss, it will allow Leshchenko to file an amended pleading if he believes he can address the pleading deficiencies identified in this Opinion and Order.

## I. Background

### A. Factual Background[1]

TopView runs an "entertainment business located primarily in New York City" that "operates guided sightseeing bus tours in Manhattan." Compl. ¶ 8. On February 7, 2023, Leshchenko began working for TopView as an "Entertainer-Actor" on the company's "newly established Night Tours." *Id.* ¶ 11. In that capacity, Leshchenko's "primary responsibilities included hosting guests on double decker tour buses, pointing out sights on the bus route, creating engaging and entertaining commentary with guests, and singing for guests." *Id.* ¶ 14. At the time of his hiring, Leshchenko's supervisors were Michael Crowley, TopView's Manager of Entertainment, and Anissa Barbato, the company's Director of Entertainment. *Id.* ¶ 15.

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Leshchenko's Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

In June 2023, TopView began "casting for a new entertainment project called Tea Around Town, which was a product-service offering on [TopView's] double decker buses that included food, alcohol, and entertainment." *Id.* ¶ 18. Leshchenko successfully auditioned for a performing role on that project but, because his role typically did not demand more than twenty-five hours per week, Leshchenko made up additional hours by working in TopView's kitchen in Midtown Manhattan. *Id.* ¶¶ 19-20. Leshchenko's service in TopView's kitchen and otherwise "was recognized as positive, evidenced by multiple offers to supervisor positions." *Id.* ¶ 21.

On November 26, 2023, one of the workers in TopView's kitchen, identified only as "Ricky," was "witnessed by other staff members using exceedingly homophobic language repeatedly, including the derogatory slur 'faggot.'" *Id.* ¶ 22. Ricky's offensive language was overheard by a TopView supervisor, Nico Torrez, who confronted Ricky regarding his behavior. *Id.* ¶¶ 23-24. But upon being confronted by Torrez, Ricky "became defensive and aggressive, and continued using derogatory language and defending its use." *Id.* ¶ 24. The next day, "several employees expressed their concern about Ricky's use of discriminatory language and drafted a collective email addressed to Crowley and Barbato." *Id.* ¶ 25. That email was ultimately sent by Matt Tierney, a "fellow Actor-Entertainer and a Server." *Id.*

Barbato responded to the collective email, "on which [Leshchenko] was included," on December 1, 2024. *Id.* ¶ 27. Her response "apologized for Ricky's behavior and indicated that the situation would be addressed." *Id.* Thereafter, TopView "admonished" Ricky regarding his behavior and "told [him] not to behave in a similar manner again." *Id.* ¶ 28. Leshchenko does not allege that Ricky engaged in any further offensive behavior or used homophobic language again.

In early January 2024, TopView relocated its kitchen to a "shared kitchen space" where Ricky worked and TopView tasked him "with assisting servers with cleaning the double-decker

3

buses." *Id.* ¶¶ 29-31.  This meant that Leshchenko "was forced to work in close proximity" to Ricky, which Leshchenko regarded as "exceedingly difficult and uncomfortable," and which allegedly caused him to feel "unsafe." *Id.* ¶¶ 32-33.

By January 15, 2024, Leshchenko "could not tolerate working with Ricky any longer" and "sought advice and assistance from Crowley and Barbato." *Id.* ¶ 34.  Through an email that he sent to Crowley and Barbato, Leshchenko wrote: "just wish that the management recognized that the fact that Ricky, the homophobic BOH[2] employee, still works here and I, along with my fellow coworkers, am conditioned to interact with him directly on a daily basis, which is extremely uncomfortable….this feels unsafe!" *Id.* ¶ 36.  Leshchenko also complained that while TopView "had no issue terminating other workers, such as Anthony Orefice after his Department of Labor complaint, management was reluctant to reprimand Ricky with more than a talking-to for his tirade of homophobic slurs." *Id.* ¶ 38.  Leshchenko ended his email by stating that he would only continue working at TopView "if he felt safe," and that otherwise he "may be forced to resign." *Id.* ¶ 39.

In response to Leshchenko's email, Barbato allegedly replied: "If you feel that you are working in a hostile work environment, then I accept your resignation." *Id.* ¶ 40.  Leshchenko then replied: "Just to be clear, I have not yet resigned.  Are you implying that I am fired in your email?" *Id.* ¶ 41.  Barbato responded that she was "replying to [Leshchenko's] request to fire an employee, and that she accepts his resignation." *Id.* ¶ 42.  Leshchenko, "shocked by Barbato's response," reiterated: "I have not resigned.  Are you firing me for asking for safety at the

---

[2] Neither the Complaint nor the parties' briefing clarify what "BOH" stands for.  The Court notes, however, that "BOH" is an acronym typically used to refer to "back of the house workers" such as "dishwashers, cooks, line cooks, [and] prep cooks."  *See Saravia v. 2799 Broadway Grocery LLC*, No. 12 Civ. 7310 (PAC), 2014 WL 2011720, at *1 (S.D.N.Y. May 16, 2014).

4

workplace?" *Id.* ¶ 43.  Barbato then replied: "Yes, I accept your resignation.  Please return all uniform and equipment items.  Your shifts have been removed from the schedule." *Id.* ¶ 44.  Leshchenko alleges that, despite stating numerous times that he did not intend to resign, TopView subsequently terminated his employment. *Id.* ¶¶ 45-47.

**B.     Procedural History**

Leshchenko filed this civil action against TopView on November 19, 2024.  Dkt. 1.[3]  His Complaint asserts claims for retaliation under Title VII (First Cause of Action), Compl. ¶¶ 53-55, the NYSHRL (Second Cause of Action), *id.* ¶¶ 56-58, and the NYCHRL (Third Cause of Action), *id.* ¶¶ 59-61.  On January 24, 2025, TopView moved to dismiss each of Leshchenko's causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkts. 20, 21 ("Motion").  Leshchenko opposed TopView's motion on February 21, 2025.  Dkt. 25 ("Opposition").  TopView filed a reply the following month.  Dkt. 31 ("Reply").

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, the Rule 12(b)(6) plausibility standard requires factual allegations sufficient to "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

---

[3] Leshchenko filed a discrimination charge with the Equal Employment Opportunity Commission on March 25, 2024, and received a right-to-sue letter on September 24, 2024.  Compl. ¶ 5.

5

### III. Discussion

TopView moves to dismiss each of Leshchenko's retaliation claims on the grounds that the Complaint fails to plausibly allege that he engaged in protected activity and that TopView was aware of any such activity. Motion at 5-12; Reply at 1-10. For the reasons discussed below, the Court agrees that Leshchenko has failed to allege a plausible claim for retaliation under Title VII. And because that claim is the sole federal cause of action asserted in the Complaint, the Court declines to exercise supplemental jurisdiction over Leshchenko's claims under the NYSHRL and the NYCHRL. The Court, however, *sua sponte* allows Leshchenko to file an amended complaint.

A. **Leshchenko's Title VII Retaliation Claim**

   1. **Applicable Law**

Leshchenko's federal retaliation claim arises under Title VII, which makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Such claims "are analyzed pursuant to the well-known *McDonnell Douglas* burden-shifting framework." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Under that framework, "[t]o establish a retaliation claim under Title VII, a plaintiff must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (internal quotation marks omitted). At the motion-to-dismiss stage, however, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). Thus, "for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—

6

against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)).

As relevant to this case, the second element under *Vega* reflects the statutory requirement that the plaintiff have "opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a).[4] Because the term "opposed" is not defined by the statute, the Supreme Court has given that term its ordinary meaning, defining it as "to resist or antagonize; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (alterations adopted) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)). Under that approach, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Id.* (internal quotation marks and emphasis omitted). But even so, "plaintiffs still must plead that they communicated *some* form of opposition to their employers." *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 366 (S.D.N.Y. 2021).

Also inherent in *Vega*'s second element is a requirement that the plaintiff's opposition was directed at an "unlawful employment practice." 42 U.S.C. § 2000e-3(a); *see Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 681 (2d Cir. 2016) ("[A] plaintiff alleging unlawful retaliation may not recover unless he reasonably believed that the conduct he opposed ran afoul of one of [Title VII's] particular statutory proscriptions."). As relevant here, Title VII declares that it is an "unlawful employment practice" for an employer to "discriminate against any individual with

---

[4] The statute also prevents employers from retaliating against any employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Leshchenko does not allege any of these forms of protected activity as the basis for his Title VII claim. *See* Compl. ¶¶ 54-55.

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex," 42 U.S.C. § 2000e-2(a)(1), which includes discrimination on the basis of sexual orientation, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020). It is well-established that an employer unlawfully discriminates with respect to the terms and conditions of employment by "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Thus, an employer engages in an unlawful employment practice for purposes of Title VII's anti-retaliation provision "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks and citation omitted). That is so even when the hostile environment results from the unauthorized harassment of the victim's non-supervisor coworkers, but only if "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (internal quotation marks omitted).

The requirement that the plaintiff's opposition be directed at an unlawful employment practice under Title VII does not, however, mean that the complained-of practice must in fact be actionable under the statute. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Instead, "[a]n employee's complaint may qualify as protected activity . . . so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). Yet an employee's belief that he is opposing an unlawful employment practice "'is not reasonable simply because

8

he . . . complains of something that appears to be discrimination in some form,' even when the complaint cites reprehensible language or behavior." *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) (quoting *Kelly*, 716 F.3d at 15). Thus, the Second Circuit has rejected retaliation claims where the plaintiff's objections "neither pointed out discrimination against particular individuals nor discriminatory practices by the employer and were thus directed at something that, as it was alleged, is not properly within the definition of an unlawful employment practice." *Kelly*, 716 F.3d at 15 (alteration adopted and internal quotation marks omitted). Under this approach, "[t]he objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person." *Id.* at 17.

**2. Analysis**

Leshchenko ties his retaliation claim to two instances of alleged protected activity: the November 2023 collective email regarding Ricky's use of homophobic language and Leshchenko's January 2024 complaint email to Crowley and Barbato regarding Ricky's continued employment at TopView and Leshchenko's frustration at having to work near him. Opposition at 8-9. Neither instance, however, presents a plausible basis for concluding that Leshchenko engaged in protected activity, requiring dismissal of his Title VII retaliation claim under Rule 12(b)(6).

Start with the November 2023 collective email. That email followed Ricky's alleged use of homophobic language and supervisor Torrez's allegedly ineffective attempt at confronting him regarding it. Compl. ¶¶ 22-24 (alleging that Ricky "was witnessed by other staff members using exceedingly homophobic language" and that "when confronted by Torrez, Ricky became defensive and aggressive, and continued using derogatory language"). As TopView seems to acknowledge, Motion at 5, the November 2023 collective email may constitute protected activity under Title VII, especially to the extent that it allegedly followed a TopView supervisor's seemingly ineffective initial response to homophobic behavior that the supervisor witnessed.

9

Compl. ¶¶ 22-24; *see Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir. 1997) ("[O]nce an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it." (internal quotation marks omitted)); *Leroy v. Delta Air Lines*, No. 21-267, 2022 WL 12144507, at *5 (2d Cir. Oct. 27, 2022) (summary order) ("An employee may have a good-faith, reasonable belief that a supervisor's hostility or indifference to a complaint about a harassing comment was itself a discriminatory employment practice.").

The problem is that, as described in the Complaint, Leshchenko's role in the November 2023 email is, at best, vague. The way the Complaint tells it, "other staff members" witnessed Ricky's alleged use of homophobic language and "several employees . . . drafted a collective email addressed to Crowley and Barbato." Compl. ¶¶ 22, 25. Another employee, Tierney, was the one who ultimately sent the November 2023 email to Crowley and Barbato. *Id.* ¶ 25. And as for Leshchenko's involvement in that collective email, the Complaint states only that he was "included" on Tierney's email, *id.* ¶ 27, yet offers no elaboration as to what that means.[5] It is therefore unclear whether and to what extent Leshchenko played any role in voicing concerns in November 2023 regarding Ricky's behavior or in organizing, drafting, or sending the collective email. Nor is it apparent, based on the facts alleged in the Complaint, whether Leshchenko being "included" on Tierney's email meant that Leshchenko supported or endorsed the email, or that Crowley and Barbato would (or reasonably should) have interpreted his inclusion on the email in that way. *Id.* ¶ 27. In fact, the Complaint does not even allege that Leshchenko was aware of Ricky's supposed homophobic conduct prior to the November 2023 email being sent. The

---

[5] Leshchenko asserts in his Opposition that "several of [TopView's] employees, including [Leshchenko]" sent the collective email. Opposition at 5. However, "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order).

Complaint therefore lacks plausible factual support for the inference that *Leshchenko* engaged in protected activity by virtue of the November 2023 email or that TopView would have attributed that email, at least in part, to *Leshchenko*.

Consider next Leshchenko's January 2024 email to Crowley and Barbato. That email expressed Leshchenko's frustration that TopView had not terminated Ricky's employment outright in response to his use of offensive language in November 2023. *See id.* ¶ 36 (complaining that "Ricky, the homophobic BOH employee, still works here"); *id.* ¶ 38 (complaining that TopView "was reluctant to reprimand Ricky with more than a talking-to for his tirade of homophobic slurs" when it had fired other employees in the past). The problem with Leshchenko's reliance on his January 2024 email, however, is that the Complaint does not plausibly allege that at the time Leshchenko sent that email, he could reasonably have believed that TopView was discriminating against him on the basis of sex in violation of Title VII.

Because Leshchenko relies on his January 2024 email as protected activity, the Court first considers whether Leshchenko "reasonably and in good faith believed, at the time of [his] complaint, that [he] was the victim of a hostile work environment" because Ricky had not been terminated. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1179 (2d Cir. 1996) (internal quotation marks omitted).[6] Leshchenko, however, complained about TopView's decision not to fire Ricky

---

[6] Leshchenko appears to separately argue that his January 2024 email was a protected complaint of a "double standard" in TopView's treatment of Ricky and another employee, Orefice. Opposition at 10. But Leshchenko has not plausibly alleged any factual support for his contention that TopView's decision to promptly warn Ricky to stop using homophobic language, instead of firing him outright, was motivated by sex discrimination. And the only fact alleged in the Complaint regarding TopView's decision to terminate Orefice is that the termination occurred at some point after Orefice filed a "Department of Labor complaint" of some sort. Compl. ¶ 38. These allegations are far too thin to plausibly support a reasonable belief on Leshchenko's part that TopView was engaging in discriminatory employment practices on the basis of sexual orientation in its firing decisions.

11

approximately seven weeks after TopView had already confronted Ricky in response to the November 2023 collective email, admonished him not to use homophobic language again, and issued an apology for his behavior. Compl. ¶¶ 27-28. Critically, while Leshchenko also expressed concern at having to interact and work with Ricky, he does not allege that Ricky continued to engage in any potentially harassing or abusive behavior after being reprimanded in early December 2023, much less that any such harassment could reasonably have been perceived as creating an actionably hostile work environment on the basis of sex as of January 2024.

Indeed, Leshchenko's Complaint provides scant, if any, factual support for the reasonableness of Leshchenko's belief that he and his coworkers were the victims of a hostile work environment in January 2024. He does not allege, for instance, that Ricky's prior use of offensive language was targeted at anybody in particular, was communicated in a threatening or abusive manner, or was anything more than an isolated incident that occurred seven weeks earlier, such that in spite of TopView's timely intervention, it could reasonably be perceived as creating a hostile work environment seven weeks later. And at the very least, Leshchenko's Complaint is completely devoid of any allegations resembling actionable harassment after November 2023, further undermining the reasonableness of his belief that he was the victim of a hostile work environment in January 2024. Thus, Leshchenko's factual allegations do not support a reasonable belief that TopView was violating Title VII by subjecting him to a hostile work environment on the basis of sex at the time he emailed his January 2024 complaint to Crowley and Barbato.

In determining whether Leshchenko reasonably believed, at the time of his January 2024 complaint, that TopView was violating Title VII, it is also necessary to consider whether a reasonable person could have believed that TopView itself was responsible for Ricky's alleged harassment under "common law principles of agency." *Reed*, 95 F.3d at 1180 (citing *Meritor Sav.*

*Bank*, 477 U.S. at 72); *see Braham v. State of N.Y. Unified Ct. Sys.*, No. 94 Civ. 2193 (DAB), 1998 WL 107117, at *3 (S.D.N.Y. Mar. 11, 1998) (rejecting a retaliation claim based on reports of harassment by coworkers where the coworkers' comments could not reasonably be attributed to the employer). That is so because to receive protection under Title VII, an employee's complaint must be "directed at an unlawful *employment practice* of his *employer*," *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (second emphasis added), not merely at offensive behavior by one whose conduct is not reasonably attributable to the employer. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (declining to "extend the protection of [Title VII's anti-retaliation provision] to the situation in which no employment practice of an employer was involved, but only an isolated incident between co-workers"); *Washington v. Nat'l R.R. Passenger Corp.*, No. 01 Civ. 4201 (BSJ), 2003 WL 21305354, at *3 (S.D.N.Y. June 5, 2003) (explaining that "an objection to a derogatory or racist remark by a co-worker does not constitute protected activity for purposes of a retaliatory discharge claim because the remark could not be attributed to the employer"). Since the only potential harassment alleged in the Complaint is the isolated use of homophobic language by Ricky, a non-supervisor coworker, characterizing that offensive behavior as discrimination *by TopView* for purposes of a retaliation claim would require plausible allegations showing that a reasonable person could believe that TopView "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Rojas*, 660 F.3d at 107 (internal quotation marks omitted).

Leshchenko's Complaint lacks plausible factual support for the notion that a reasonable person in Leshchenko's position could have believed that TopView responded unreasonably to

potential harassment.[7] Title VII does not "mandate that an employer take any particular remedial action, let alone take the plaintiff's preferred remedial action in response to a complaint of harassment." *Dikambi v. City Univ. of N.Y.*, 690 F. Supp. 3d 293, 307 (S.D.N.Y. 2023) (internal quotation marks omitted). Instead, it is well-established that remedial action need only be "sufficiently calculated to end the harassment" and that even a mere warning "can be an appropriate response if it conveys the message that further harassment will not be tolerated," especially when the warning prevents further harassing conduct. *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 176 n.30 (E.D.N.Y. 2015) (internal quotation marks omitted). To be effective, therefore, "an employer's remedy need not necessarily expel the harasser from the work environment." *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 526 (S.D.N.Y. 2000).

Here, the Complaint alleges that TopView responded swiftly to the only alleged episode of potential harassment by Ricky with a reprimand—"admonish[ing]" him "not to behave in a similar manner again," Compl. ¶ 28—after which no further instances of potentially harassing conduct are alleged to have occurred. Crucially, the Complaint lacks any factual allegations that could support an objectively reasonable belief that TopView's response was inadequate, such as any allegations that Ricky continued to engage in potentially harassing conduct after November 2023. As a result, it would not have been reasonable for Leshchenko to believe that TopView itself was discriminating against him on the basis of sexual orientation in January 2024. So even reading the Complaint to allege that Leshchenko's January 2024 email to TopView concerned the company's response to Ricky's prior derogatory comments and that the email was the basis for Leshchenko's

---

[7] The Complaint also does not contain any allegations regarding the reasonableness (or lack thereof) of TopView's avenues for complaint.

termination, his "claim of retaliation would still not be cognizable under Title VII because 'his opposition [*i.e.*, the January 2024 email] was not directed at an unlawful *employment practice* of his employer.'" *Rozenfeld v. MTA Bus Co.*, No. 13 Civ. 4847 (KPF), 2015 WL 1174768, at *9 (S.D.N.Y. Mar. 16, 2015) (quoting *Wimmer*, 176 F.3d at 135)).

Accordingly, the Court grants TopView's motion to dismiss Leshchenko's claim for retaliation under Title VII, the First Cause of Action.

### B. Supplemental Jurisdiction Over Leshchenko's NYSHRL and NYCHRL Claims

In addition to his Title VII claim, Leshchenko asserts retaliation claims under the NYSHRL and the NYCHRL. Compl. ¶¶ 56-61. The only jurisdictional basis that the Complaint alleges for these claims is supplemental jurisdiction under 28 U.S.C. § 1367(a). *See* Compl. ¶ 3. A court's exercise of supplemental jurisdiction, however, is discretionary, and "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006). This case is no exception: Leshchenko's lone federal cause of action has been dismissed for failure to state a claim, the litigation is still at its very early stages, and no exceptional circumstances are present that would justify a departure from the principle that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018). Accordingly, the Court declines to exercise supplemental jurisdiction over Leshchenko's state-law and city-law claims and dismisses those claims without prejudice.

### C. *Sua Sponte* Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because this is the first time that

15

the Court has ruled on the plausibility of Leshchenko's pleading and because Leshchenko may well be able to cure the pleading defects identified in this Opinion and Order, the Court *sua sponte* grants Leshchenko leave to amend. *See Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017) ("[A] court has the discretion to grant leave to amend *sua sponte* even when the amending party has not moved for leave to amend the pleading." (internal quotation marks omitted)). Leshchenko, however, should only file an amended pleading if he believes in good faith that he can correct the deficiencies identified above. As explained, that will require the addition of factual allegations plausibly showing either that Leshchenko participated in the November 2023 collective complaint regarding Ricky's use of homophobic language or that, as of January 2024, Leshchenko reasonably believed that he was subject to harassing conduct attributable to TopView.[8]

### IV. Conclusion

For these reasons, the Court grants TopView's motion to dismiss. Leshchenko's Complaint is dismissed without prejudice to filing an amended complaint on or before July 21, 2025. Leshchenko is cautioned that, absent a timely request for an extension, the failure to file an amended complaint by that deadline will result in the dismissal with prejudice of his First Cause of Action. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 20.

SO ORDERED.

Dated: June 30, 2025
New York, New York

JOHN P. CRONAN
United States District Judge

---

[8] Because TopView moved to dismiss the Complaint solely on the ground that Leshchenko has not plausibly alleged that he engaged in protected activity of which TopView was aware, the Court expresses no view as to whether Leshchenko has otherwise pleaded a plausible claim for retaliation under Title VII. Opposition at 12. And because the Court declines to exercise supplemental jurisdiction over Leshchenko's NYSHRL and NYCHRL causes of action, it does not address the merits of Leshchenko's claims under those statutes.